UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**In re: Tyeisha Lashawn Muse,**         Case No. 21-32137-KLP
      **Debtor.**                                                Chapter 13

## MEMORANDUM OPINION

This matter comes before the Court on the objection (the "Objection") of creditor DriveMax Inc. ("DriveMax") to the confirmation of the chapter 13 plan filed by debtor Tyeisha LaShawn Muse (the "Debtor"). DriveMax argues that the Debtor's chapter 13 plan was not filed in good faith, as required by § 1325(a)(3) of the Bankruptcy Code, 11 U.S.C. § 1325(a)(3). In the plan, which modifies the Debtor's initial unconfirmed chapter 13 plan, the Debtor proposes to surrender the vehicle securing DriveMax's claim and treat DriveMax as an unsecured creditor. DriveMax opposes confirmation because the vehicle suffered severe damage after the bankruptcy filing and after the Debtor allowed the contractually required insurance on the vehicle to lapse, resulting in a lack of insurance proceeds available to compensate DriveMax. DriveMax asserts that the Debtor's failure to maintain collision insurance on the vehicle improperly shifts the burden of loss onto DriveMax and, therefore, the plan treating it as an unsecured creditor was not filed in good faith.

The parties filed memoranda in support of their respective positions, and the Court held an evidentiary hearing on March 23, 2022, at which the Debtor testified,

1

and exhibits offered by DriveMax were admitted.[1] After the Court's careful consideration of the memoranda, the evidence presented at the hearing and the parties' arguments, for the reasons set forth below, the Objection will be overruled.

## Jurisdiction and Venue

The Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and the general order of reference of the U.S. District Court for the Eastern of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (L). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409.

## Findings of Fact

On March 19, 2021, the Debtor entered into a retail installment contract and security agreement (the "Contract") with DriveMax to purchase and finance a 2009 Chevy Traverse LT (the "Vehicle"). Under the terms of the Contract, the Debtor was required to maintain physical damage insurance on the Vehicle at all times.

On July 8, 2021, the Debtor filed a chapter 13 bankruptcy petition in this Court. On July 9, 2021, the Debtor submitted her initial chapter 13 plan (the "July Plan"). Under Paragraph 4.D of the July Plan, the Debtor proposed to retain the Vehicle and treat DriveMax as fully secured.[2] The July Plan also provided for adequate protection payments of twenty dollars a month to DriveMax pending confirmation.

---

[1] The parties also submitted joint stipulations. ECF 25.
[2] The July Plan listed the "Approx. Bal. of Debt or "Crammed Down" Value as $4427.27, which was to be paid in monthly installments of $88.73 over 55 months with interest at 4.25%. On July 16, 2021, DriveMax filed a proof of claim (Claim No. 3-1) listing a fully secured claim in the amount of $4478.80.

2

Although DriveMax did not object to the July Plan, another party did object, and the July Plan was denied confirmation. Under the terms of the minute order entered on September 22, 2021, denying confirmation,[3] the Debtor was provided thirty days to file an amended plan.

On September 19, 2021, the Debtor's automobile insurance was cancelled by the insurer after the Debtor paid only a portion of the policy premium. The Debtor admitted that she did not pay the full amount of the premium, testifying that her intention was to pay the remaining portion upon receipt of her next paycheck. The Debtor also admitted that after she was notified of the cancellation, she continued to knowingly operate the Vehicle without insurance coverage. The Debtor did not notify DriveMax of the lapse in insurance nor that she was continuing to operate the uninsured Vehicle.

On October 4, 2021, 15 days after the insurance coverage had lapsed, the Debtor was involved in an automobile accident (the "Accident") that caused extensive damage to the Vehicle. It was only then that the Debtor notified DriveMax that the insurance had been cancelled.

On October 14, 2021, ten days after the Accident, the Debtor filed a modified plan (the "October Plan"). In the October Plan, the Debtor proposes to surrender the Vehicle to DriveMax and treat DriveMax's claim as unsecured.[4] On October 21,

---

[3] ECF 13.
[4] The October Plan also eliminates the adequate protection payments to DriveMax that were included in the July Plan.

2021, DriveMax filed the Objection. The parties have stipulated that there are no insurance proceeds with which to repair or replace the Vehicle.[5]

## Conclusions of Law and Additional Findings of Fact[6]

DriveMax argues that the October Plan was not submitted in good faith, does not meet the requirements of 11 U.S.C. §1325(a)(3),[7] and should not be confirmed. More specifically, it objects to Section 4B of the October Plan, which provides that the Vehicle will be surrendered to DriveMax and DriveMax will be treated as a non-priority unsecured creditor.[8] The October Plan proposes to pay unsecured creditors an estimated distribution of two percent.[9] Thus, under the October Plan DriveMax would receive only two percent of the principal amount it stood to receive under the July Plan.

DriveMax cites the Debtor's use of the Vehicle while she knew it was uninsured, which it argues directly led to the loss of its collateral, as the basis for denying confirmation. Under the terms of the Contract, the Debtor was required to carry physical damage insurance on the Vehicle until the debt had been paid. In the

---

[5] ECF 25 (Joint Stipulation)

[6] This is a contested matter under Federal Rule of Bankruptcy Procedure 9014. Federal Rule of Bankruptcy Procedure 7052 is made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014. *See* Fed. R. Bankr. P. 9014. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

[7] 11 U.S.C. § 1325 lists the requirements for confirmation of a chapter 13 plan.  Under 11 U.S.C. § 1325(a)(3), the plan must be "proposed in good faith and not by any means forbidden by law."

[8] The Objection states that DriveMax "hereby objects to the confirmation of the plan on the basis that it is not in good faith and that the Debtor who has abused and neglected the Collateral of the Creditor should not be permitted to shift the resulting loss to the Creditor and should be required to pay Creditor's claim in full."  ECF 19, p.3.

[9] The October Plan states that if the case were to be liquidated under Chapter 7, there would be no distribution to unsecured creditors.  No party has challenged this assertion.

4

July Plan, the Debtor did not propose to surrender the Vehicle but, instead, to retain it and pay DriveMax as a fully secured creditor. When the October Plan shifted the loss of the Vehicle's value to DriveMax, DriveMax objected. DriveMax maintains that the October Plan was not submitted in good faith because the Debtor, not DriveMax, should suffer the financial burden of the loss resulting from her intentional failure to maintain appropriate insurance on the Vehicle.[10] DriveMax asserts that it should be paid the full amount of its secured claim as it existed when the July Plan was proposed. The Court disagrees for the following reasons.

The Bankruptcy Code requires debtors who seek protection under Chapter 13 to file their plans "in good faith." 11 U.S.C. § 1325(a)(3). "Good faith" is not defined in this section of the Bankruptcy Code, nor is there a definition contained in the legislative history. Each Circuit has therefore developed its own set of criteria for how to determine whether a debtor has filed a chapter 13 plan in good faith.

The Fourth Circuit has stated that for purposes of determining whether a chapter 13 plan meets the requirements of § 1325(a)(3) "[a] comprehensive definition of good faith is not practical," *Deans v. O'Donnell (In re Deans)*, 692 F.2d 968, 972 (4th Cir. 1982) (quoting 9 Collier on Bankruptcy 9.20 at 319 (14th ed. 1978)[11]). Having considered prior case law, including cases decided under the former

---

[10] DriveMax Inc. challenges only the good faith of the filing of the October Plan; it does not argue that Debtor lacked good faith when she filed her chapter 13 case. Since the lapse in insurance coverage and the Accident did not take place until after the bankruptcy filing, the Court need not address whether the filing of the case was in bad faith in violation of § 1325(a)(7) of the Bankruptcy Code, 11 U.S.C. § 1325(a)(7).

[11] Analyzing Chapter 11 of the former Bankruptcy Act, 11 U.S.C. § 766(4) (1976) (repealed).

5

Bankruptcy Act, the Fourth Circuit has determined that "the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan." *Id.*; accord *Branigan v. Bateman (In re Bateman)*, 515 F.3d 272, 283 (4th Cir. 2008). The "'totality of circumstance must be examined on a case by case basis' in determining whether a plan meets the general good faith standard of § 1325(a)(3)," *Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir. 1986) (quoting *Deans*, 692 F.2d at 972).

In *Neufeld*, the Fourth Circuit provided a detailed, but not exclusive, list of factors that courts should consider when conducting a "good faith" evaluation of a plan, including:

> [T]he percentage of proposed repayment, the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor.

*Neufeld*, 794 F.2d at 152 (quoting *Deans v. O'Donnell*, 692 F.2d at 972). Therefore, to determine whether the Debtor's chapter 13 plan has been submitted in good faith, the Court will examine the totality of the circumstances by considering the *Neufeld* and similar factors, in particular whether the Debtor has abused the provisions, purpose, or spirit of chapter 13. In doing so, the Court bears in mind that the burden of proof is on the debtor.[12]

---

[12] When an objection to a chapter 13 plan is made, "[t]he Debtor has the burden of proving that . . . the Plan [was] filed in good faith." *In re Cole*, 548 B.R. 132, 149 (Bankr. E.D. Va. 2016) (citing *In re Colston*, 539 B.R. 738, 746 (Bankr. W.D. Va. 2015)). A plan should be found to have been filed in bad faith only upon a showing of "serious debtor misconduct or abuse." 8 Collier on Bankruptcy ¶ 1325.04[1] (16th ed. 2018).

The circumstances in this case are largely undisputed. DriveMax's evidence was primarily limited to establishing the circumstances involving the Accident and the Debtor's failure to maintain the contractually required insurance coverage. Evidence related to the factors highlighted by the Fourth Circuit in *Neufeld* consists primarily of the Debtor's testimony, which was unrebutted, and the record, including the Debtor's schedules.[13]

Examining the *Neufeld* factors, the Court finds that the percentage of proposed distribution to unsecured creditors, two percent, is minimal; however, a chapter 7 case would result in no distribution to unsecured creditors. The October Plan therefore contemplates a better outcome for unsecured creditors than a liquidation. Moreover, the October Plan provides for submission of all the Debtor's monthly net income over a period of 60 months, the maximum commitment period.[14]

The Debtor has been employed with MCAP Farnham LLC as a Program Assistant since October of 2020, with no indication that her employment is in jeopardy. The Debtor"s employment history appears to be stable.

---

[13] "The Court can take judicial notice of its own records. *In re Heilig-Meyers Co.*, 328 B.R. 471, 488-89 (E.D. Va. 2005); *In re Rivera*, No. 13-14351-BFK, 2014 WL 287517, at *2 n.2 (Bankr. E.D. Va. Jan. 27, 2014); *In re Ryan*, 472 B.R. 714, 727-28 (Bankr. E.D. Va. 2012)." *In re Cheeks*, No. 19-10516-BFK, 2019 WL 3805990, at *4 n.4 (Bankr. E.D. Va. Aug. 13, 2019).

[14] Although the Debtor qualifies for a commitment period of three years pursuant to 11 U.S.C. § 1325(b)(4), the October Plan proposes a commitment period of five years. 11 U.S.C. § 1322(d)(2) authorizes the Court, for cause, to approve a commitment period of up to five years for a debtor with below median family income. No party has challenged whether cause exists in this case for a five-year commitment period.

The Debtor's unsecured debt consists primarily of student loan indebtedness and medical bills.[15] Her household income consists solely of her net pay and SNAP benefits. She lists four dependent children including a one-year-old daughter and two-year-old granddaughter. She has filed no other bankruptcies in the last eight years. Given the Debtor's limited resources and number of dependents, her financial situation is, at best, challenging, even after having obtained the relief associated with her bankruptcy filing.

The Court found the Debtor's testimony to be credible. She was honest in representing facts, including the circumstances involving the Vehicle. She acknowledged that she was only able to pay a portion of the insurance premium and that she was aware the insurance coverage had lapsed yet continued to operate the Vehicle. She did not intend to injure DriveMax but had no alternative transportation available.

The Court finds that the Debtor has demonstrated that the October Plan was proposed in good faith and not by any means forbidden by law and, therefore, satisfies the requirements of 11 U.S.C. § 1325(a)(3). Although the Debtor defaulted on her postpetition contractual obligation to maintain insurance coverage on the Vehicle, her actions do not rise to the level of "an abuse of the provisions, purpose, or spirit of [chapter 13] in the proposal or plan . . . ." *Deans*, 692 F.2d at 972.

---

[15] There is no evidence that the Debtor was engaged in reckless or extravagant spending or that she amassed a significant amount of debt immediately prior to filing her bankruptcy petition.

Adding to the circumstances of this case is that DriveMax was listed as a loss payee on the Debtor's insurance policy[16] and would likely have been entitled to advance notice of the policy cancellation. DriveMax chose not to address its apparent failure to secure force-placed insurance coverage but made no assertion that the Debtor impeded its ability to exercise its right to do so. Moreover, the Debtor was not issued a citation in connection with the Accident, suggesting that the damage to the Vehicle was the fault of another party. DriveMax did not allege the Debtor's unwillingness to cooperate nor any other reason for its failure to obtain a recovery against the party who may have been responsible for the Accident. When considering the totality of the circumstances, the Court believes it appropriate to compare DriveMax's unexplained failure to protect itself to the Debtor's precarious financial condition that led to her inability to pay the full premium. *See e.g. In re Hutchison*, 449 B.R. 403, 410 (Bankr. W.D. Mo. 2011) (the court should assess the unfairness to the debtor versus the unfairness to the creditor(s) for any plan modification that would make a secured creditor unsecured).

DriveMax cites the case of *In re Butler*, 174 B.R. 44 (Bankr. M.D.N.C. 1994), to support its contention that a debtor should not be allowed to modify their chapter 13 plan to surrender a vehicle that was severely damaged in a postpetition accident after the debtor had allowed the insurance coverage to lapse. In *Butler*, the court rejected the debtors' motion to modify their plan. *Butler* differs from this

---

[16] ECF 28, Ex. 4.

9

case, however, because at the time of the accident in *Butler*, there was a confirmed plan already in place, and the confirmation order required the debtors to maintain insurance on the vehicle or else not operate it. *Id.* at 46 and 49. The court emphasized that it was the debtors' failure to abide by the confirmation order that influenced its decision to find an absence of good faith. *Id.* at 49. In contrast to *Butler*, there was no failure on the part of the Debtor to comply with an order of this Court. No plan has yet been confirmed; hence, there is no confirmation order binding the Debtor. The circumstances present in *Butler* do not exist in this case. *See also In re Cooper*, 167 B.R. 889 (Bankr. E.D. Ark. 1994) (rejecting debtor's request to modify plan to surrender vehicle after it was damaged and uninsured due to debtor's failure to maintain coverage where confirmed plan provided for full payment of creditor's secured claim).

The Court finds the case of *In re Walker*, No. 4:03-bk-17741E, 2003 WL 22794522 (Bankr. E.D. Ark. Oct. 31, 2003), to be more persuasive. In *Walker*, the collateral was lost postpetition but before a plan had been confirmed. "[W]here collateral is lost pre-confirmation, it is well settled that the creditor has only an unsecured claim even if it continues to have a security interest in the missing collateral under state law." *Id.* at *2. Three vans serving as collateral for a loan from a credit union were lost after they were abandoned by the side of the road by the debtor's employees following mechanical breakdowns. At the time, the credit union was paying the insurance premiums because the debtor had failed to maintain insurance on the vans, but the insurer denied any claims on the loss. The

10

credit union subsequently challenged the debtor's plan that sought to treat the debt as unsecured. The court ultimately determined that while the debtor was "negligent in protecting the . . . collateral," the credit union could only be secured as far as the debtor had the collateral that secured the debt. *Walker*, 2003 WL 22794522, at *3. The court held that since there was no showing of "fraud or other culpable behavior," the debtor's negligence did not preclude the plan from being confirmed over the objection of the credit union. *Id.* In the instant case, as in *Walker*, the Debtor knowingly continued to operate her Vehicle after the insurance had lapsed, but there has been no suggestion that she committed fraud. The circumstances in the present case, as in *Walker*, favor the Debtor. See also *In re Tucker*, 500 B.R. 457, 463 (Bankr. N.D. Miss. 2013), ("[a] debtor may modify a confirmed plan to surrender collateral and reclassify any deficiency as an unsecured claim provided the modification is consistent with the [good faith] requirement[] of § 1325(a)").

In an effort to bolster its argument that the Debtor's continuing to operate the Vehicle after the insurance had lapsed establishes the absence of good faith, DriveMax also maintains that its claim against the Debtor would not be dischargeable in a chapter 7 bankruptcy. However, DriveMax provides no factual or legal support for this assertion; it merely proclaims this to be the case. Even if the circumstances were such that dischargeability of the claim in chapter 7 were an issue, this factor would be only one consideration. As the Fourth Circuit stated in *Neufeld*:

11

> [T]he issue of dischargeability in Chapter 7 need not, and cannot, be litigated to conclusion in every Chapter 13 confirmation proceeding. Where significant claims involve conduct that would otherwise raise serious Chapter 7 dischargeability issues, however, the quality of that conduct is part of the 'totality of circumstances' which must be weighed, with other factors, in assessing the debtor's good faith under Chapter 13.

*Neufeld*, 794 F.2d at 153.

The Court also bears in mind that chapter 13 is generally favored over chapter 7 from a policy standpoint. "Chapter 13 can and should be available even to those whose . . . misdeeds are the source of their current financial problems." *In re Colston*, 539 B.R. 738, 748 (Bankr. W.D. Va. 2015). This accords with the fact that "the discharge available in chapter 13 is broader than the chapter 7 discharge in that certain debts not dischargeable in chapter 7 are dischargeable in chapter 13." 8 Collier on Bankruptcy ¶ 1328.02) (16th ed. 2018). As such, DriveMax's "dischargeability" argument has no bearing on the Debtor's good faith in proposing the October Plan.

The Court finds that the October Plan satisfies the requirements of 11 U.S.C. § 1325(a) and must be confirmed. Addressing DriveMax's secured claim, the October Plan properly proposes to surrender the Vehicle to DriveMax in compliance with 11 U.S.C. § 1325(a)(5)(C). Having considered the totality of the circumstances, the Court also specifically finds that the Debtor has carried her burden of demonstrating that the October Plan satisfies the requirements of 11 U.S.C. § 1325(a)(3) that it be proposed in good faith and not by any means forbidden by law.

For the reasons set forth above, DriveMax's Objection to the October Plan will be overruled, and the Court will direct the Chapter 13 trustee to submit his standard confirmation order.

An order in accordance with this opinion will be issued

Signed: May 20, 2022

/s/ Keith L. Phillips
United States Bankruptcy Judge

Entered On Docket: May 20, 2022

Copies:

Amanda DeBerry Koehn
Boleman Law Firm, PC
P.O. Box 11588
Richmond, VA 23230-1588

Patrick Thomas Keith
Boleman Law Firm, PC
P.O. Box 11588
Richmond, VA 23230-1588

Tyeisha Lashawn Muse
PO Box 37
Lottsburg, VA 22511

Carl M. Bates
P. O. Box 1819
Richmond, VA 23218

Edward S. Whitlock, III
Jennifer S. Wheeler
Lafayette, Ayers & Whitlock, PLC
10160 Staples Mill Road, Suite 105
Glen Allen, VA 23060

13